13366

PRUDENTIAL INSURANCE CO. OF AMERICA v. MONK *ET AL.*

(162 S. E., 911)

Messrs. *C. Y. Brown* and *C. E. Daniel,* for appellants, Southern Bond & Mortgage Co. and Citizens Bank, 

Messrs. *J. D. Kerr, Nelson & Mullins,* and *F. B. Grier, Jr.,* for respondents, 

March 14, 1932.

The opinion of the Court was delivered by Mr. Justice Stabler.

This is an action for foreclosure of a real estate mortgage given to the plaintiff by the defendant Robinson O. Monk. The mortgagor's title being at issue, the Circuit Judge held that he had and mortgaged only a life interest in the land; the appeal involves only this question, appellants contending that he could and did mortgage the fee.

Robinson O. Monk derives title to the land from the following provisions of the will of his father, Robinson B. Monk: "I give, devise and bequeath unto my beloved son, Robinson O. Monk, my place known as my Campton farm * * * for his own use and herefor during his lifetime. In the event of the death of my son Robinson O. Monk without heirs, then I devise the said tract to my grandchildren."

The same language in the same will was construed by this Court, adversely to the position of appellants here, in *Monk*

*v. Geddes,* 159 S. C., 86, 156 S. E., 175. Permission, upon request, was granted to counsel in the case at bar to seek a review of that decision.

It is not contended that the heirs of Robinson O. Monk took any estate in the land by express provision of the will; if they took any such estate, it arose by implication. In the *Geddes case* we held, for the reasons there stated, that the word "heirs," as used in the will, must be construed to mean either "heirs of the body" or "children." It is clear that if appellants' position is to be sustained, the word "heirs" must be held to mean "heirs of the body," for if it means "children" and they take the remainder after the death of Robinson O. Monk, then the result would be the same in so far as he is concerned, for he would still take only a life estate. Narrowing the construction of the word "heirs," therefore, for the purposes of this appeal, to "heirs of the body," it would be necessary, in order to hold that Robinson O. Monk could convey the fee, to hold that an estate in remainder arose by implication in the "heirs of the body" of Robinson O. Monk, and that by operation of the rule in *Shelley's case* he took a fee-conditional estate and hence, issue having been born to him, could give a fee-simple title.

To support their position, counsel for appellants rely upon their conception of the testator's intention, invoking the rule that in the construction of a will the testator's manifest intention must govern. That rule is, of course, elementary, but equally important is the qualification that in case of conflict between such intention and a settled rule of law, the latter must prevail. Perhaps in no case decided in this State is this qualification more forcibly expounded than in *Carr v. Porter,* 1 McCord, Eq., 60, upon which appellants strongly rely and in which the Court said, *inter alia:* "But no Judge could ever intend to carry the doctrine so far as to lay aside all the settled rules of construction, and to determine the testator's intention from his own arbitrary views of the abstract justice of the case."

We do not believe that the testator intended to give to Robinson O. Monk any estate other than a life interest; but even if such was his intention, it must fail of accomplishment because of direct conflict with the well-established principle, adhered to as late as 1929, in *Bomar v. Corn,* 150 S. C., 111, 147 S. E., 659, that a fee-conditional cannot arise by implication, as well as the further rule, referred to in the same case, that there can be no fee-conditional where there is a good executory devise over. See, also, *Barber v. Crawford,* 85 S. C., 54, 67 S. E., 7, and other cases cited in the former opinion.

Turning again to the case of *Carr v. Porter, supra,* we find the language of the will construed to be as follows: "The rest and residue of my real and personal estate to be divided between my grandsons Willson Willson and Thomas Willson, and delivered to them at the age of twenty-one; but should they die leaving no lawful issue, in that case I give the whole of my estate, both real and personal, to Richard Godfrey and others, etc."

Willson Willson died under age and without issue, by which his moiety went over to Thomas Willson as a cross-remainder by implication. Thomas sold the land in question; and after his death his children undertook to have the Court declare that he took only a life estate under the will and that, therefore, the estate of his grantee terminated at his death. It is said in the opinion that, by the express terms of the will, the testator gave a fee-simple estate to his grandson Thomas and nothing to the issue. Complainants contended, however, that an estate in remainder was created by implication in the issue of Thomas as purchasers, and that, therefore, Thomas took only a life estate. This position was overruled. The Court stood squarely upon the ground that an estate by implication can never arise except from necessity, and that where such implication is raised from the will the necessity must appear also on the face of that instrument. It was held that the issue took no estate, and, while the

Court said that it was unnecessary to determine the nature of the estate which Thomas took, it hardly seems open to question that he took a fee-simple estate defeasible upon his dying "leaving no lawful issue." The case is not in point here, and much of what was said in the opinion, even if it should be thought to support appellants' position, is clearly in conflict with later decisions of this Court, and appears to have been said mainly by way of concession for the purpose of argument, the Court differentiating the case before it from those cases discussed in the opinion.

The testator in the case at bar gave his son, Robinson O. Monk, the Campton farm for life, but gave nothing to Robinson's "heirs." To give the will the construction contended for by appellants, we must not only, as said in the *Carr case,* "infer his [testator's] meaning from what he has not said, but we must presume that he intended something directly contrary to what he has said."

After careful consideration, *de novo,* of the entire matter, we find no reason to change our views as expressed in the opinion in the *Geddes case.*

The judgment of the Circuit Court is, therefore, affirmed.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES CARTER and BONHAM concur.

MR. JUSTICE COTHRAN did not participate on account of illness.